1

2

3

4

5

6

7

8                **UNITED STATES DISTRICT COURT**

9                **CENTRAL DISTRICT OF CALIFORNIA**

10

11   COUNTY OF SAN BERNARDINO,           Case No. EDCV 13-1137 PSG (SS)

12              Plaintiff,               **ORDER GRANTING IN PART AND**
                                         **DENYING IN PART DEFENDANT GULF**
13        v.                             **UNDERWRITER INSURANCE**
                                         **COMPANY'S MOTION TO COMPEL**
14   PACIFIC INDEMNITY COMPANY, et       **PRODUCTION OF DOCUMENTS**
     al.,
15
                                         **[DKT. NO. 151]**
16              Defendants.

17

18

19

20                          **I.**

21                    **INTRODUCTION**

22

23        On  June  24,  2014,  Defendant  Gulf  Underwriters  Insurance

24   Company ("Gulf") filed a Motion to Compel Production of Documents

25   from Plaintiff County of San Bernardino (the "County") in this

26   insurance  coverage  action.   (Dkt. No. 151-1).   Gulf seeks the

27   production  of  documents  responsive  to  its  March  14,  2014

28   subpoenas  to  the  County's  insurance  brokers,  Alliant  Insurance

Services, Inc. ("Alliant") and Swett & Crawford ("Swett"), which are currently in the County's possession but are being withheld pursuant to the attorney-client privilege. (Dkt. No. 151-2 at 8-10). Specifically, Gulf seeks three categories of documents that were disclosed to the County's insurance brokers: (1) documents on which Tom Vernon but no other County attorney appears ("Category 1"); (2) internal County attorney-client communications ("Category 2"); and (3) communications on which County counsel and the County's insurance brokers appear ("Category 3"). (Id. at 13, 21, 26). These 161 documents are reflected on the County's April 21, 2014 and June 16, 2014 privilege and redaction logs. (See Dkt. Nos. 151-5 at 100-113; 151-8 at 16-30). The County opposes Gulf's Motion to Compel on the ground that the documents at issue are facially privileged and disclosing them to third-party insurance brokers was "reasonably necessary" to accomplish the purpose of the underlying attorney-client communications. (Dkt. No. 151-2 at 6). The Court granted Gulf's ex parte application to shorten time on its Motion to Compel, (Dkt. No. 153), and the Court heard argument on this matter on July 1, 2014. At the conclusion of the hearing, the Court indicated that it would conduct a limited in camera review of the at-issue documents to determine whether the attorney-client privilege applies and whether the County waived the privilege by disclosing these communications to Alliant and Swett.

On July 3, 2014, the Court issued an Order requiring supplemental briefing regarding Gulf's Motion to Compel. (Dkt.

No. 165).   The Court explained that because California privilege law governs this dispute, Bible v. Rio Props., Inc., 246 F.R.D. 614, 617 (C.D. Cal. 2007) (citing Star Editorial, Inc. v. U.S. Dist. Ct. for Cent. Dist. of Cal., 7 F.3d 856, 859 (9th Cir. 1993)), in camera review of the at-issue documents to determine the applicability of the attorney-client privilege did not appear proper absent the County's consent.   See Costco Wholesale Corp. v. Super. Ct. ("Costco"), 47 Cal. 4th 725, 736-40 (2009) (rejecting interpretation of Cal. Evid. Code § 915 that permits a court to conduct in camera review of attorney-client communications to determine whether they are privileged, but allowing for the possibility of in camera review if the party invoking the privilege requests such review).   Accordingly, the Court ordered the parties to submit additional briefing and/or evidence regarding the following issues:   (1) the dominant purpose of Mr. Vernon's relationship with the County; and (2) whether the County's disclosure of privileged communications to Alliant and Swett was reasonably necessary to effectuate the purpose of attorney-client communications.   (Dkt. No. 165 at 3-8).

On July 8, 2014, the County filed a Supplemental Memorandum in response to the Court's Order.   (Dkt. No. 167).   The County also filed the declaration of Mr. Vernon, which describes in greater detail his relationship with and the services he provided the County.   (Dkt. No. 167-3).   In its Supplemental Memorandum, the County did not address the issues raised in the Court's July 3, 2014 Order.   Instead, the County expressly requested that the

Court conduct a limited in camera review of the documents that Gulf seeks in order to "efficient[ly] . . . resolve the parties' dispute over the documents in question." (Dkt. No. 167 at 3).

On July 10, 2014, Gulf filed its Response to the County's Supplemental Memorandum. (Dkt. No. 171). In its Response, Gulf opposed in camera review on the ground that the County has not carried its burden of demonstrating that the dominant purpose of its relationship with Mr. Vernon was the provision of legal advice, or that disclosing the at-issue documents to third-party insurance brokers was reasonably necessary to further the purpose of attorney-client communications. (Id. at 2-5). Notwithstanding its opposition to in camera review, Gulf identified certain documents on the County's privilege and redaction logs for the Court to review in the event it decided to permit in camera review. (Id. at 6).

On July 11, 2014, the Court granted the County's request for a limited in camera review of the documents that Gulf seeks. (Dkt. No. 174). The Court explained that "[b]ecause the County, i.e., the party invoking the attorney-client privilege, has requested in camera review . . . ," in camera review is not barred by the California Supreme Court's decision in Costco. (Id. at 4). The Court further explained that in camera review would be helpful in resolving Gulf's Motion to Compel because by "reviewing the content of the documents that Gulf seeks, the Court [would] be better equipped to determine, in light of all the relevant evidence, whether (1) the documents in dispute are

privileged, and (2) disclosure to Alliant and Swett vitiated this privilege." (Id. (footnote omitted)). Accordingly, the Court ordered the County to lodge for in camera review all the Category 1 documents identified in its Supplemental Memorandum, five Category 2 documents, and five Category 3 documents. (Id. at 4-5). The Court also ordered the County to lodge for review those documents identified by Gulf as communications that should be included in any in camera review. (Id. at 5). On July 14, 2014, the County lodged these documents with the Court. (Dkt. No. 174).

The Court has completed its in camera review of the above-listed documents. Based on this review, the applicable case law, and all the relevant evidence, the Court GRANTS in part and DENIES in part Gulf's Motion to Compel.

## II.

### DISCUSSION

**A.  Documents On Which Tom Vernon But No Other County Attorney Appears Are Protected By The Attorney-Client Privilege**

**1.  Legal Standard**

"The attorney-client privilege has been a hallmark of Anglo-American jurisprudence for almost 400 years[,]" Mitchell v. Super. Ct., 37 Cal. 3d 591, 599 (1984), and its "fundamental purpose" is "to encourage full and open communication between

client and attorney." <u>Zimmerman v. Super. Ct.</u>, 220 Cal. App. 4th 389, 396 (2013) (internal quotations omitted). In California, the attorney-client privilege is governed by statute, and the party claiming the privilege "shoulders the burden of showing that the evidence it seeks to suppress falls within the terms of [the] applicable statute." <u>HLC Properties, Ltd. v. Super. Ct.</u>, 35 Cal. 4th 54, 60 (2005). Pursuant to California Evidence Code § 954, the attorney-client privilege "confers a privilege on the client 'to refuse to disclose, and to prevent another from disclosing, a confidential communication between client and lawyer[.]'" <u>Costco</u>, 47 Cal. 4th at 732. "The party claiming the privilege" must establish the "preliminary facts necessary to support its exercise, <u>i.e.</u>, a communication made in the course of an attorney-client relationship." <u>Id.</u> at 733. Once a party "establishes facts necessary to support a prima facie claim of privilege, the communication is presumed to have been made in confidence and the opponent of the claim of privilege has the burden of proof to establish the communication was not confidential or that the privilege does not for other reasons apply." <u>Id.</u>

The attorney-client privilege does not attach, however, to an attorney's communications "when the client's dominant purpose in retaining the attorney was something other than to provide the client with a legal opinion or advice." <u>Id.</u> at 736 (citing cases). "For example, the privilege is not applicable when the attorney acts merely as a negotiator for the client or is providing business advice; in that case, the relationship between

6

the parties to the communication is not one of attorney-client." Id. (citing Aetna Cas. & Sur. Co. v. Super. Ct., 153 Cal. App. 3d 467, 475 (1984)); see also 2,022 Ranch, LLC v. Super. Ct., 113 Cal. App. 4th 1377, 1398 (2003) (attorney-client privilege protects "communications that constitute the actual rendering of, or request for, legal advice, not those communications reflecting" the factual investigation of a claim by attorneys also working as insurance adjusters).

Where, as here, it appears that parties have a relationship with dual, legal and non-legal purposes, a court's initial job in assessing whether the attorney-client privilege applies is to "determine the dominant purpose of the relationship" between the parties. Id. at 739-40; see also Clark v. Super. Ct., 196 Cal. App. 4th 37, 51 (2011) (the "focus of the inquiry" is "the dominant purpose of the relationship between the parties to the communication"). When the party claiming the privilege shows "the dominant purpose of the relationship between the parties to the communication was one of attorney-client, the communication is protected by the privilege." Clark, 196 Cal. App. 4th at 51; see also Wellpoint Health Networks, Inc. v. Super. Ct., 59 Cal. App. 4th 110, 119-20 (1997) ("Under the Evidence Code, the attorney-client privilege applies to confidential communications within the scope of the attorney-client relationship even if the communication does not relate to pending litigation[.]"). Indeed, once the party invoking the privilege makes this showing, it is error for a court to focus on the content of particular communications to determine the privilege's applicability

1   "because, under California law, the privilege protects the

2   transmission in the context of such a relationship irrespective

3   of its content[.]"   <u>Cal. Earthquake Auth. v. Metro. West Secs.</u>

4   <u>LLC</u>, 285 F.R.D. 585, 595 (E.D. Cal. 2012) (citing <u>Costco</u>, 47 Cal.

5   4th at 736-39).

6

7        **2.   Analysis**

8

9        Gulf argues that, as a threshold matter, documents on which

10  Mr. Vernon but no other attorney appears are not privileged.

11  (<u>See</u> Dkt. No. 151-2 at 14).   Gulf contends that such documents

12  are not privileged because Mr. Vernon, "while a member of the

13  California bar, did not represent the County" in his capacity as

14  an attorney.   (<u>Id.</u>).   According to Gulf, Mr. Vernon did not

15  function as the County's attorney, but instead provided business,

16  insurance-related advice in his role as President for Excell

17  Environmental Ins. Services Inc.   (<u>Id.</u>).

18

19        The County argues that contrary to Gulf's position, the

20  services Mr. Vernon provided were fundamentally legal in nature.

21  The County explains that Mr. Vernon was a legal consultant who

22  "provided the County legal advice regarding coverage placement,

23  tendering claims to insurers, and coverage disputes with

24  insurers."   (<u>Id.</u> at 16).   To support this claim, the County

25  offers two declarations.   First, the County offers the

26  declaration of Mr. Whiteside, its current Director of Risk

27  Management, as evidence that Mr. Vernon provided the County legal

28  services, such as (a) reviewing and revising prospective reports

and tenders to the County's insurers, (b) communicating legal recommendations to the County, and (c) corresponding on the County's behalf with insurance brokers. (Whiteside Decl. at ¶¶ 6-9). However, as the Court has previously noted, Mr. Whiteside's declaration is of limited persuasive value because while the at-issue communications involving Mr. Vernon occurred primarily in the late 1990s, the County did not hire Mr. Whiteside until 2004. (Dkt. No. 165 at 4).

Second, the County offers the declaration of Mr. Vernon, which describes in greater detail his relationship with and the services he provided the County. (Dkt. No. 167-3). Mr. Vernon explains that his company, Excell, was originally retained by Alliant to assist the County in placing insurance coverage for its landfills. (Id. at 2). In late 2005, after the County obtained the coverage with which Excell assisted, Pamela Thompson, the County's Risk Manager, engaged Mr. Vernon "separately from Excell's prior engagement by Alliant" to provide legal advice to the County regarding existing insurance coverage. (Id. at 2). According to Mr. Vernon, "[s]uch advice was provided to the County in [his] capacity as an attorney," and was distinct from his earlier role in placing insurance coverage for the County's landfills. (Id.).

Mr. Vernon states that after his retention as the County's attorney, he "engaged in privileged and confidential communications with County attorneys, County officials, and with the County's insurance brokers. Those conversations pertained

9

1  generally to the policies [the brokers] had helped the County to

2  place, and also to certain provisions of its contractor's (_i.e._,

3  NORCAL) own insurance policies.  [He] intended such conversations

4  to be privileged and confidential." (_Id._ at 3).  Mr. Vernon also

5  "conducted necessary factual investigations in connection with

6  rendering [his] legal advice[,]" such as "review[ing] and

7  revis[ing] prospective reports and render[ing] advice both as to

8  their content and as to the procedure for delivering them to the

9  County's insurers." (_Id._).  Moreover, "[a]t all times relevant

10 to the instant motion, the County was [his] client[,]" and he

11 "understood that all communications between [them] were to be,

12 and stay, confidential and privileged." (_Id._).

13

14     Having considered the documents lodged by the County for _in_

15 _camera_ review, and in light of the evidence the County has

16 produced regarding its relationship with Mr. Vernon during the

17 time period relevant to Gulf's Motion to Compel, the Court finds

18 that the County has carried its burden of establishing a prima

19 facie claim of privilege over documents on which Mr. Vernon but

20 no other attorney appears.  Mr. Vernon's declaration is

21 persuasive evidence that he was hired by the County primarily for

22 his legal expertise concerning insurance-related matters and the

23 provision of legal advice and/or services.  _See_ _Clark_, 196 Cal.

24 App. 4th at 49-52 (declarations were substantial evidence that

25 all disputed communications were privileged); _McAdam v. Stat_

26 _Nat'l Ins. Co, Inc._, __ F. Supp. 2d __, 2014 WL 1614515, at *4

27 (S.D. Cal. March 21, 2014) ("[D]eclarations as to the existence,

28 nature, and scope of an attorney-client relationship may provide

1   sufficient evidence of the relationship even in the absence of .

2   . . a written retainer agreement.").   Mr. Vernon's declaration

3   establishes that the dominant purpose of his relationship with

4   the County was one of attorney-client notwithstanding his pre-

5   1995 non-legal work for the County.   This evidence weighs in

6   favor of a finding that the County has carried its threshold

7   burden regarding the attorney-client privilege's applicability.

8

9       Moreover, the documents that the Court reviewed in camera

10  corroborate Mr. Vernon's declaration.   These documents show,

11  inter alia, Mr. Vernon providing legal advice concerning

12  insurance coverage issues, analyzing reports, and discussing

13  other legal issues involving the County.   These communications,

14  taken together, indicate the existence of a relationship that

15  was, first and foremost, one of attorney-client.   See Aetna Cas.

16  & Sur. Co., 153 Cal. App. 3d at 476 (finding a "classic example

17  of a client seeking legal advice from any attorney" where

18  attorney was "given a legal document (the insurance policy) and

19  was asked to interpret the policy and to investigate the events

20  that resulted in damage to determine whether [the insurer] was

21  legally bound to provide coverage for such damage").

22

23      Although some documents the Court reviewed are more

24  probative of an attorney-client relationship than others, the

25  Court notes that its task is not to determine the dominant

26  purpose of each communication on which Mr. Vernon appears.

27  "[T]he relevant inquiry . . . is instead the relationship of the

28  communicators."   Clark, 196 Cal. App. 4th at 52; see also McAdam,

1  __ F. Supp. 2d __, 2014 WL 1614515, at *3-4.  Because the County
2  has set forth facts establishing that the dominant purpose of Mr.
3  Vernon's relationship with the County was the provision of legal
4  advice   and/or   opinions,   the   Court   presumes   that   the
5  communications   involving   Mr.   Vernon   that   Gulf   seeks   are
6  privileged irrespective of their content.  Costco, 47 Cal. 4th at
7  733-35  ("[B]ecause  the  privilege  protects  the  transmission  of
8  information,  if  the  communication  is  privileged,  it  does  not
9  become  unprivileged  simply  because  it  contains  material  that
10  could  be  discovered  by  some  other  means.").   Accordingly,  the
11  documents on which Mr. Vernon but no other attorney appears are,
12  as  a  threshold  matter,  entitled  to  protection  from  disclosure
13  pursuant to the attorney-client privilege.[1]

14

15  **B.**  **The County Must Produce Documents That Reveal *Only* The**
16     **Factual   Circumstances   Under   Which   An   Attorney-Client**
17     **Communication Occurred**

18

19     **A. Legal Standard**

20

21     Under California law, "[w]hile involvement of an unnecessary
22  third   person   in   attorney-client   communication   destroys
23  confidentiality, involvement of third persons to whom disclosure
24  is  reasonably  necessary  to  further  the  purpose  of  the  legal

25  _____

[1] That Mr. Vernon's communications with the County are in fact
26  privileged does not resolve whether the County waived this privilege by
disclosing these communications to its insurance brokers.  Thus, the
27  Court's discussion regarding whether disclosure to the County's brokers
vitiated the attorney-client privilege applies with equal force to all
28  privileged communications disclosed to the County's brokers.

1  consultation preserves confidentiality of communication." <u>Ins.</u>
2  <u>Co. of N. Am. v. Super. Ct.</u>, 108 Cal. App. 3d 758, 765 (1980).
3  "Thus, for example, the [attorney-client] privilege extends to
4  communications which are intended to be confidential, if they are
5  made to attorneys, to family members, business associates, or
6  agents of the party or his attorneys on matters of joint concern,
7  when disclosure of the communication is reasonably necessary to
8  further the interest of the litigant." <u>OXY Res. Cal. LLC v.</u>
9  <u>Super. Ct.</u>, 115 Cal. App. 4th 874, 890 (2004) (internal quotation
10  marks omitted).    This "common-interest doctrine" permits
11  "disclosure between parties, without waiver of privileges, of
12  communications protected by the attorney-client privilege . . .
13  where the disclosure is necessary to accomplish the purpose for
14  which the legal advice was ought." <u>Citizens for Ceres v. Super.</u>
15  <u>Ct.</u>, 217 Cal. App. 4th 889, 914 (2013).

16

17      There is scant California case law addressing whether an
18  insured waives attorney-client privilege by disclosing privileged
19  communications to its insurance broker.    However, a review of
20  relevant case law in other jurisdictions indicates that "[g]iven
21  the level of complexity" involved in purchasing insurance and the
22  role that insurance brokers may play in communicating with and
23  negotiating on behalf of an insured, disclosure to a broker does
24  not necessarily destroy attorney-client privilege.[2]    <u>See, e.g.,</u>
25  _____

26  [2]    "Where the state's highest court has not decided an issue, the
   task of the federal courts is to predict how the state high court would
27  resolve it[,]" and in answering this question, a court may "look[] for
   'guidance' to decisions by intermediate appellate courts of the state
   and by courts in other jurisdictions." <u>Dimidowich v. Bell & Howell</u>,
28  803 F.2d 1472, 1482 (9th Cir. 1986); <u>see also Burlington Ins. Co. v.</u>

13

1   <u>Atmel Corp. v. St. Paul Fire & Marine Ins. Co.</u>, 409 F. Supp. 2d

2   1180, 1181-82 (N.D. Cal. 2005) (disclosure to insurance broker

3   did not waive attorney-client privilege where (1) the broker was

4   "necessary conduit of information between" insured and insurers;

5   (2) the broker and the insured worked together to provide

6   relevant information about litigation or claims to the insurers;

7   (3) the broker's expertise was necessary to understand general

8   liability, coverage and litigation issues; and (4) disclosure to

9   the broker was therefore "reasonably necessary to provide

10  information to the insurers"); <u>Royal Surplus Lines Ins. v.</u>

11  <u>Sofamor Danek Grp. ("Royal")</u>, 190 F.R.D. 463, 470-72 (W.D. Tenn.

12  1999); <u>id.</u> at 82 ("Clearly, the insured cannot hide material

13  facts from the insurer by funneling them through its attorney.

14  Nevertheless, the attorney-client privilege does not contain a

15  caveat, either by statute or common law, which would vitiate the

16  confidentiality of the insured's communications with its

17  attorneys simply because the subject matter of the communication

18  is advice regarding a contract for insurance."); <u>Exxon Corp. v.</u>

19  <u>St. Paul Fire & Marine Ins.</u>, 903 F. Supp. 1007, 1010 (E.D. La.

20  1995) (disclosure to broker did not destroy privilege where

21  broker received confidential communications "for the purpose of

22  effectuating legal representation" provided to the insured).

23  Typically, where courts have found that disclosure to third-party

24  brokers was reasonably necessary to further the purpose of

25  attorney-client communications, the party invoking the privilege

26  has provided persuasive evidence of reasonable necessity. <u>See,</u>

27
_____

28  <u>Oceanic Design & Constr., Inc.</u>, 383 F.3d 940, 944 (9th Cir. 2004)
    (same).

1  e.g., Atmel Corp., 409 F. Supp. 2d at 1181-82; Sony Comp. Entm't

2  Am., Inc. v. Great Am. Ins. Co. ("Sony"), 229 F.R.D. 632, 634

3  (N.D. Cal. 2005); Royal, 199 F.R.D. at 471.[3]

4

5      2.  **Analysis**

6

7      Gulf seeks to compel the production of (1) internal County

8  attorney-client communications disclosed to third-party brokers,

9  and (2) communications on which County counsel and the brokers

10  appear, on the ground that the County's privilege and redaction

11  logs contain "no indicia" that disclosure to Alliant and Swett

12  was "reasonably necessary" to accomplish the purpose of attorney-

13  client communications.  (Dkt. No. 151-2 at 24).  The County

14

---

15  [3]    In Atmel Corp., the insured party (Atmel) submitted a letter from
its broker's Vice President and Claims Executive, Mr. Alan J. Kaye,
16  Esq., in support of its opposition to the defendant's motion to compel.
See CV 04-04082 SI, Dkt. No. 110-2 at 2.  Mr. Kaye not only joined
17  Atmel's opposition to the motion to compel, he also explained that the
documents at issue included his communications with "various Atmel
18  counsel including [a] member of their internal legal staff and their
counsel of record in this case."  Id.  He further expressed his belief
19  that these communications were "cloaked with the Attorney/Client
Privilege."  Id.  In Sony, the district court, applying California law,
20  held that an insured's disclosure to its broker destroyed attorney-
client privilege where it provided "no evidentiary support" for its
21  claim that the broker was present to further its interest or that
disclosure was reasonably necessary to accomplish the purpose for which
22  a lawyer was consulted.  229 F.R.D. at 634.  However, the court
suggested that had the insured submitted declarations from the broker
23  or even its own Director of Legal and Business Affairs, this may have
been sufficient to prove the privilege's preservation.  Id.  Finally,
24  in Royal, the insured submitted the affidavit of its broker's Senior
Vice President, which explained that he was "the main conduit of
25  information between [the insurer] and [the insured] during the
negotiations of the policy[,]" and that he met with the insured's
26  general counsel to discuss potential coverage disputes and "work with
the [insured] and its attorneys to defeat attempts by [the insurer] to
27  avoid its obligations."  190 F.R.D. at 471.  "To this end," the affiant
in Royal "participated in meetings and strategy sessions with [the
28  insured] and [the insured's] counsel."  Id.

1   contends, however, that its shared interest with its brokers "is

2   plain." (Dkt. No. 151-2 at 30). The County argues that the

3   brokers "contracted with the County to provide insurance related

4   activities. The documents the County withheld or redacted that

5   contain attorney-client communications intended to offer legal

6   advice about negotiating, obtaining, or updating insurance

7   policies could not have achieved their purpose without disclosure

8   to the brokers hired to make those tenders." (Id.).

9

10   In support of its argument that disclosure was reasonably

11   necessary, the County submits Mr. Whiteside's declaration. Mr.

12   Whiteside states that the County "contracts with insurance

13   brokers to negotiate and procure certain lines of coverage.

14   Those brokers also tender claims to and communicate with the

15   insurance companies that provide those lines of coverage.

16   [Alliant and Swett] are two such brokers. Both Alliant and Swett

17   negotiated and procured insurance policies for the County,

18   including some that are relevant to this litigation. Both . . .

19   tender claims to and communicated with the insurance companies on

20   the County's behalf and at its direction, in connection with

21   those policies." (Whiteside Decl. at ¶¶ 3-4).

22

23   Having reviewed the documents the County lodged with the

24   Court, the Court finds that, consistent with Mr. Whiteside's

25   declaration, Alliant and Swett were essential conduits between

26   the County and its insurers to whom disclosure was reasonably

27   necessary. The documents the Court reviewed in camera were

28   generally quintessential attorney-client communications, such as

16

1  (a) discussions between County counsel and County personnel
2  concerning the County's insurance policies and/or claims
3  initiated against the County and (b) communications between
4  County counsel and the insurance brokers reflecting County
5  counsel's assessments of certain legal issues. Because the
6  County enlisted Alliant and Swett to correspond and negotiate
7  with insurers on its behalf, disclosing these privileged
8  communications to the brokers was reasonably necessary to
9  effectuate the legal advice the County received regarding
10 insurance-related matters.

11

12    Just as in Atmel Corp., the insurance brokers in this case
13 negotiated insurance policies with insurers on the insured's
14 (i.e., the County's) behalf, served as a conduit of information
15 between the insured and its insurers, and worked with the insured
16 to provide relevant information about litigation or claims to the
17 insurers. See 409 F. Supp. 2d at 1181. The brokers' expertise
18 in this case was necessary to the County's understanding and
19 procurement of insurance coverage, and given the County's
20 reliance on its brokers' knowledge and know-how, disclosure of
21 privileged, insurance-related communications was reasonably
22 necessary to ensure the implementation of County counsel's legal,
23 insurance-related advice. Accordingly, the County's disclosure
24 of attorney-client communications to the brokers did not vitiate
25 the attorney-client privilege.

26

27    Notwithstanding the general absence of waiver in this case,
28 the Court has identified two documents the disclosure of which

17

was <u>not</u> reasonably necessary to effectuate the purpose of a privileged attorney-client communication.   Documents **Alliant Privilege Log 8** and **Alliant Privilege Log 9** are e-mail chains between County personnel, County counsel and the brokers that concern the scheduling of a meeting regarding pollution claims against the County.   The attorney-client privilege does not protect "'independent facts related to a communication'" from disclosure, such as the fact that a communication occurred, or the communication's time, date and participants.   <u>Samuels v. Mix</u>, 22 Cal. 4th 1, 20 n.5 (1999) (quoting <u>State Farm Fire & Cas. Co. v. Super. Ct.</u>, 54 Cal. App. 4th 625, 640 (1997)).   Because **Alliant Privilege Log 8** and **Alliant Privilege Log 9** do not reveal the substance of any privileged attorney-client communication, and instead reflect only the timing of and participants in a future communication, the Court finds that the County may not properly withhold these documents, <u>and others like them</u>, from production.

In sum, the County's disclosure of privileged communications to its third-party insurance brokers, Alliant and Swett, did not vitiate the attorney-client privilege because disclosure was reasonably necessary to effectuate the insurance-related, legal advice that the County received from its attorneys.   However, the County is not entitled to withhold documents from Gulf that reveal only the fact of an attorney-client communication or the factual circumstances under which the communication occurred.

18

### III.

### CONCLUSION

For the foregoing reasons, the Court GRANTS in part and DENIES in part Gulf's Motion to Compel Production of Documents. **NO LATER THAN MONDAY, AUGUST 4, 2014**, the County must produce to Gulf the documents withheld under **Alliant Privilege Log 8, Alliant Privilege Log 9**, and any similar documents on its privilege and redaction logs that (a) do not reveal the substance of an attorney-client communication, and (b) reveal only the factual circumstances, such as date, time, place and participants, under which an attorney-client communication occurred.   The County is <u>not</u> required to produce any other documents from the privilege and redaction logs at issue in Gulf's Motion to Compel.

DATED:  July 30, 2014

                                    /S/
                              SUZANNE H. SEGAL
                              UNITED STATES MAGISTRATE JUDGE